October 25, 1935, the date of the judgment in the lower court, until paid.

The computation of the amounts due the plaintiff and the interpretation of the Act No. 310, of 1910, § 3, is in accordance with the doctrine laid down in the case of Wilkins v. Universal Life Insurance Co. (La. App.) 159 So. 185, and the case of Dale v. Washington National Life Insurance Co., 179 La. 928, 155 So. 438.

For the reasons assigned, the judgment of the lower court is amended by allowing the plaintiff $7.50, with legal interest from January 22, 1934, until paid, $97.50, with legal interest from August 13, 1934, until paid, and $130, penalties and attorney's fees, with legal interest from October 25, 1935, and as amended the judgment of the lower court is affirmed. Defendant to pay all costs.

On Application for Rehearing.

PER CURIAM.

 We erred in allowing interest on the judgments. Plaintiff did not claim interest originally and did not amend her petition in order to include it. See article 157, Code of Practice. Our decree is therefore amended so as to exclude the item of interest.

With this amendment, both applications for rehearing are refused.

ADEN et al. v. SCOTT–BURR STORES CORPORATION et al.

No. 1733.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1937.

J. E. Huckabay, of Baton Rouge, for appellants.

Laycock & Moyse and Albritton & Hardin, all of Baton Rouge, for appellees.

DORE, Judge.

Mrs. Louella Ramer Aden sues the Scott-Burr Stores Corporation and its insurer, the Indemnity Insurance Company, for damages in the sum of $3,500 on account of personal injuries received by her when she fell while walking in the store operated by said Scott-Burr Stores Corporation in the city of Baton Rouge on June 6, 1936. Her husband joins in the suit and claims damages in the sum of $139.40 incurred by him on account of said injury. The trial judge rejected the demands of plaintiffs, and they appeal.

After a careful consideration of the evidence and a thorough study of the decision rendered in the lower court, this court has come to the conclusion that it will accept the views of the trial judge as its own. The analysis of facts and the clear and correct reasons for judgment could not be improved upon, so we adopt as our opinion the reasons for judgment given by Judge Holcombe, to wit:

"The plaintiff claims that the portion of the floor upon which she slipped and fell was greasy and slick and therefore dangerous and unsafe for the customers of the store to walk on, and that it was due solely and entirely to the condition of the floor that she fell and was injured.

"The defendants admit that Mrs. Aden fell, but they deny that the fall was in any manner due to the condition of the floor in said store.

"Defendants further deny that the floor was, at the time of the accident, slick and greasy or in any way unsafe or dangerous. They attribute Mrs. Aden's fall to the fact that she was in haste, and because of the instability of her footwear and because of her weight. Defendants further claim that no oil or greasy substance had been placed on said floor within two weeks of the date of the accident, and that when oil was applied to said floor on May 23, 1936, before the store was opened to the public, a sweeping compound known as "Feldspar" was applied to the floor in order that the oil would be absorbed and the floor left dry, clean, and safe.

"The question of fact presented in this case is, Did Mrs. Aden slip and fall because the floor was oily and greasy, or was her fall simply an accident that could as well have happened at any other place?

"Mrs. Aden says that after the accident, her dress, shoes, and left hand were soiled with oil and grease. She further says that immediately after the accident she went to the office of Dr. Landry in Port Allen, La., for treatment, and that at that time her hand, her dress, and shoes were soiled with oil or some other greasy substance. She says, however, that the only persons to whom she showed her soiled dress and shoes were her husband and a young lady who worked for her by the name of Laurent. She further states that after showing her dress and shoes to her husband and Miss Laurent she sent the dress to the laundry, and had the shoes polished. Therefore on the date of the trial of this case neither the shoes nor the dress showed any trace of oil or grease. The dress was not offered in evidence, but the shoes were, and, as stated, they bore no evidence of having come in contact with oil or grease, but did appear to have been slightly run down and considerably worn. Counsel for plaintiff made no inquiry of Dr. Landry, who was sworn as a witness, as to whether or not he saw any oil or grease on Mrs. Aden's hand or arm or upon her dress or shoes when she came to his office for examination and treatment. Mrs. Aden testified, as stated, that she showed her dress and shoes to Miss Laurent, but Miss Laurent was not sworn as a witness in the case nor was any effort made to have her testimony taken by deposition before a notary public. She is alleged to reside in the parish of West Baton Rouge.

"There is therefore not one scintilla of evidence to corroborate Mrs. Aden's testimony that there was oil and grease on her dress, her hand, or her shoes, except the testimony of her husband, although if the oil or grease was there it could have been fully shown by at least two other disinterested witnesses, that is, by Dr. Landry and Miss Laurent.

"It is of course possible that Mrs. Aden could have, by reason of slippery floors, fallen without soiling either her dress or shoes, but as she has relied upon her statement and that of her husband that oil and grease were upon her hand, dress, and shoes, in order to show that the accident was due to the presence of these substances upon the floor, it is inconceivable why she had the dress washed and the shoes polished without at least exhibiting them to other persons besides the house girl before she had the dress laundered and the shoes polished, and it is also inconceivable that she did not call the attention of Dr. Landry to the presence of these substances on her shoes, hand, and dress. The reason assigned that the house girl was not permitted by some third person to testify in the case does not suffice. She could have been made to testify in the manner prescribed by law. The only reasonable conclusion, therefore, that can be reached as to why this young lady was not sworn as a witness is that she would not or could not corroborate the testimony of the plaintiffs in this case.

"The evidence is abundant that no oil had been applied to this floor for two weeks preceding the accident. It is also conclusively shown that after the oil was applied on May 23, on the following Monday morning, that is, on May 25, the powdered mineral compound referred to was placed on the floor and the whole floor carefully swept. This mineral compound, according to the testimony of Dr. A. R. Choppin, professor of physical chemistry at the Louisiana State University, contains less than one-tenth of 1 per cent. of greasy substance. He was asked the question whether or not the placing of this mineral on a wooden floor would tend to make it slippery or not, and he replied that it would have a tendency to prevent slipping unless it was wet. He further testified that,

it has the tendency to bring about the absorption of oil and to take up oil, and therefore to prevent slipping rather than to ' cause one walking on a floor thus treated to slip.

"There is no testimony in the record contradicting the testimony offered by the defendant showing that the floor in the store in question had not been oiled or greased at any time subsequent to May 23, 1936; and there is likewise no testimony in the record to show that the application of Feldspar to a floor which had been treated with oil would have any other effect than that stated by Dr. Choppin, that is any other effect than to absorb the oil and therefore dry out the floor.

"Mrs. Aden testified that she made no complaint on the day of the accident to the manager of the store concerning her fall or the injuries sustained by her as a result thereof. In fact, she says that she did not return to the store until a week later, at which time she says she returned with her house girl and went to the store to look for a mark upon the floor at the point where she fell. She states that she fell at a point about one foot on the north side of the third counter near the eastern end of the counter. Mrs. Angelina Campagna, however, a saleslady, says that the accident happened near the second counter as you enter the store from Third street. Mr. Freeman, manager of the store, testified that after the accident was reported to him he examined the floors both at the point shown him by Mrs. Campagna and for 15 feet beyond that point going west, which would include the point where Mrs. Aden says she fell, and that he found no marks upon the floor at either place except the natural markings in the wood. The court visited the scene of the alleged accident and found that the floor is much lighter in the middle of the aisle than it is near the counters. This probably is due to the fact that the counters extend at the top several inches beyond the glass inclosing the counter, and therefore it would be difficult for one to walk or place his foot while walking on the boards immediately adjacent to and near the counters.

"Mrs. Aden testified that when she fell her foot was about one foot from the counter, and that she fell to the left and on her side backwards. If indeed she fell in this manner, it is hard to understand why her head did not hit the counter, and,

unless on the day she fell she marked the exact spot where she fell, it would seem improbable that she could go back to the store one week after the accident and point out the identical spot where she fell. In any event, whether she fell at the spot where she says she fell or at the place where Mrs. Campagna says she fell, the court is not satisfied that her fall was due to either oil or grease upon the floor.

■■ "In all civil cases, the law·requires that the plaintiff make out his case by a preponderance of the testimony. In this case the court is of the opinion that the plaintiff has failed to meet this burden of proof. There can be no doubt that Mrs. Aden fell to the floor. Just what caused her to fall is not clear. There is no proof that she was, as stated by the defendants in their answer, hurrying across the floor or even walking fast, nor does it appear that Mrs. Aden was an unduly large woman.

"In the condition the testimony is in, it is impossible for this court to say how and why she fell. It suffices to say that the court has not been convinced that she fell as the result of any negligence on the part of the defendant, the Scott-Burr Stores Corporation, and particularly on account of the fact that the floor was either oily or greasy on the day of the accident. The testimony of Mr. Freeman is to the effect that approximately 4,500 people enter and walk upon the floors of this store in one day. Six days had elapsed from the date of the accident until Mrs. Aden returned to the store to make an examination of the floors. If Mr. Freeman's testimony is correct, 27,000 people entered that store within a week's time, yet not a single person had fallen or claimed to have fallen by reason of the condition of said floors within that time.

"Learned counsel for the plaintiff bases his case primarily on the case of Redon v. Standard Accident Insurance Company (La.App.) 161 So. 762. The facts in that case are very different from the facts found to exist here. In that case the floor had not been scrubbed or cleaned for several years ' and the defendant applied to the floor once a day a sweeping compound which was 25 per cent. oil by weight. The Court of Appeal for the Parish of Orleans held that due to the constant use of this oily substance a considerable amount of oil had accumulated·on the floor, and that there were probably spots on the floor where the oil was thicker than at other

134

places, and that it was unquestionably at one of these particularly oily spots that the plaintiff fell; in other words, in that case the court was satisfied that the floor was slick and greasy, whereas in this case there is no evidence to sustain this position except the fact that the floor had two weeks before the accident been oiled.

"The testimony in this case shows that it was the habit of the manager of the Scott-Burr Stores Corporation to apply oil to defendant's store every three or four weeks, but the floor thereafter was cleaned with Feldspar, a mineral compound containing less than one-tenth of 1 per cent. of oil. Again in the Redon Case there was satisfactory proof that plaintiff's heel left a mark on the floor, whereas in this case neither Mr. nor Mrs. Aden could state positively that Mrs. Aden's shoe made a mark on the floor, nor did anybody else testify that they saw a heel mark on the floor after the accident. As stated, Mrs. Aden did testify that some days after the accident she saw a mark on the floor, but her testimony on this point is not convincing, particularly for the reason that there are various markings upon the floor which seem to corroborate the testimony of Mr. Freeman that they are natural marks in the wood and not marks caused by the heel of a shoe.

 "The court has been referred to no case in our jurisprudence similar to the case at bar except the Redon Case, decided by the Court of Appeal for the Parish of Orleans. If a storekeeper keeps a floor used by his customers greasy and oily and therefore unsafe to walk upon, there can be no doubt that he is failing in the performance of a duty which he owes his customers, that is, to provide them a safe place upon which to walk. If in this case the court was satisfied that the defendant had failed in their performance of this duty, notwithstanding the scarcity of similar cases in our own jurisprudence, the court would not hesitate to find the defendant liable under article 2315 of the Civil Code. The trouble in this case is that the court has not been convinced that Mrs. Aden fell as a result of an oily or greasy condition of defendant's floor. The court agrees to the proposition that it is not negligence per se to oil a floor, but it is negligence for a storekeeper to permit loose oil to remain on the floor, as was decided in the Redon Case.

"Learned counsel for the plaintiff urges that if Mrs. Aden had fallen from turning her ankle she certainly would not have fallen with sufficient force to break her wrist. He claims that the breaking of her wrist cannot be accounted for upon any reasonable theory except that the accident happened as she says it did. This is mere conjecture. There is always likelihood of injury to one who falls suddenly, regardless of what causes the fall. Most all falls are sudden and unanticipated, and the tendency is always to put out a hand to break the weight of the fall. That is apparently what Mrs. Aden did in this case, and for that reason her wrist was injured in the fall. The accident was, of course, a regrettable one and Mrs. Aden unquestionably has suffered considerable pain and discomfort and may sustain for quite a while some disability, but the court cannot guess why she fell and how she fell, nor award judgment solely upon the uncorroborated testimony of plaintiffs, and, in the absence of satisfactory proof that she fell as the result of the negligence of the defendant, the demand of both plaintiffs is therefore denied and rejected, and it is therefore ordered that this suit be dismissed at their cost."

Judgment affirmed.